**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cr-00203-TWP-TAB |
| ) | |
| DJUANE L. MCPHAUL, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Djuane L. McPhaul's ("Mr. McPhaul") Motion to Suppress ([Filing No. 40](#)). Mr. McPhaul is charged with violating 18 U.S.C. §922(g)(1)—felon in possession of a firearm—and 18 U.S.C. §931(a)(1)—violent felon in possession of body armor. He seeks to suppress all evidence obtained from a warrantless search of his vehicle during a traffic stop. Mr. McPhaul asserts that the traffic stop was pretext and the search and seizure of his vehicle and person was made without probable cause and in violation of his Fourth Amendment rights, justifying suppression of the evidence found during the search. On July 2, 2015, an evidentiary hearing was held on Mr. McPhaul's Motion. For the reasons set forth below, Mr. McPhaul's Motion to Suppress is **GRANTED in part and DENIED in part**.

## I.    FINDINGS OF FACT

On December 21, 2013, at approximately 3:15 a.m., Ball State University Police Department ("BSUPD") Officer Andrew Sell ("Officer Sell") observed a white Cadillac sedan near Ball State University campus and observed the driver turn right from the straight lane of traffic on two occasions. Officer Sell ran a report on the vehicle's license plate and learned that the vehicle was registered to Djuane McPhaul, who had a suspended driver's license. Officer Sell

noted that the vehicle's driver was a Black male, which matched the race and gender on the registration. Officer Sell determined that he would initiate a traffic stop so he continued to follow the vehicle for a short period of time. After witnessing a third traffic infraction Officer Sell initiated a traffic stop by activating his police lights to direct the driver to pull over. The driver did not speed up or slow down, but just continued south. After between 50 and 100 yards, Officer Sell hit his siren "a couple times to try to get the driver's attention." When the driver did not stop, Officer Sell activated his siren. The driver continued driving for approximately .9 miles at speeds from 15 to almost 40 miles per hour. Officer Sell reported over his police radio that he was in a "slow-speed pursuit."[1] The driver made four turns before finally stopping at a gas station and pulling his vehicle into a parking space.

Muncie Police Department ("MPD") officers Matt Berger ("Officer Berger"), James Lenox and Ball State University Officer David Barnes ("Officer Barnes") and several other officers converged in the parking lot. Officer Sell ordered Mr. McPhaul to turn the vehicle off and show his hands. Mr. McPhaul did not immediately comply with orders but instead remained in the vehicle for approximately 60 seconds, and it appeared to Officer Sell that Mr. McPhaul was placing something in the center console or glove box. Mr. McPhaul was ordered to place the car keys on the roof of the vehicle to which he complied. As he exited the vehicle, officers noticed that Mr. McPhaul had items in his hands. Once out of the vehicle, Mr. McPhaul was instructed to place the items he was holding on the ground, and again he complied. These items were his wallet, cell telephone, and an Indiana driver's license belonging to Johnny Jerome Bennett.

---

[1] Although Officer Sell testified at the hearing that the vehicle traveled at a speed of about 40-45 miles per hour, his written report noted a speed of 15 to 40 mph. Officer Berger testified that McPhaul's vehicle did not "speed up or slow down" and it was not a high-speed pursuit.

Officer Barnes placed Mr. McPhaul in handcuffs and immediately began a pat down and search of his person for officer safety. Officer Barnes found $245.00 in Mr. McPhaul's pants pocket and discovered that Mr. McPhaul was wearing KDH class 3a body armor with trauma plates. After Mr. McPhaul was secured, Officer Barnes began the search of Mr. McPhaul's person. Approximately ten officers can be seen in the dash cam video from Officer Barnes' police car converging on the vehicle and searching Mr. McPhaul's person and the interior and trunk of the car (Gov. Exhibit #3). Mr. McPhaul was placed under arrest for resisting law enforcement in a vehicle.

Officers Sell and Barnes, along with Muncie Police Department officers Matt Berger and James Lenox conducted a warrantless search of Mr. McPhaul's vehicle pursuant to BSUPD General Order and Policy # 5.5 ([Filing No. 48-4](#)) and MPD Inventory Search Policy 1.2.4.IV.H ([Filing No. 48-5](#)). While conducting the search of the vehicle, the officers discovered a stolen, loaded Smith & Wesson 9mm handgun and ammunition located in the center console. Officers also conducted a warrantless search of Mr. McPhaul's trunk where they located a locked Sentry brand safe. Officers located a key to the safe on Mr. McPhaul's key ring; thereafter they opened and searched the safe. The safe contained $2,000.00 in cash.

Mr. McPhaul's vehicle was towed and impounded. The contents that were not designated as contraband or evidence were catalogued in a BUSPD Tow-In/Boot Report. Mr. McPhaul was transported to Delaware County Jail. State charges were brought and then dismissed against Mr. McPhaul. On October 7, 2014, Mr. McPhaul was indicted on charges under 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 931(a)(1).

In April 2013 Mr. McPhaul had a previous encounter with officers of the BSUPD wherein he alleges that he was illegally detained and assaulted. As a result of that encounter, Mr. McPhaul

filed a civil rights complaint against BSUD and four officers for false arrest and illegal detention without probable cause.

## II. DISCUSSION

### A. Need for a Hearing

Mr. McPhaul requested a hearing on his Motion to Suppress. "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). Mr. McPhaul raised disputed issues of material fact, therefore an evidentiary hearing was held on July 2, 2015.

### B. Validity of the Stop

Mr. McPhaul moves to suppress the evidence seized from the traffic stop. He asserts that officers unlawfully detained and arrested him and conducted an illegal search and seizure of his vehicle. Mr. McPhaul contends that there was no probable cause to stop him, and therefore, the officers' actions were in violation of the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Specifically, he argues that the traffic stop was pretext and the resulting search of his person and vehicle was unreasonable and improper; therefore, the evidence seized by the officers from his person and his vehicle must be suppressed.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment prohibits a warrantless search unless the search falls under one of the recognized exceptions to the warrant requirement. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the

warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional.  *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).

The Court finds that there was probable cause to stop Mr. McPhaul.  When an officer effectuates a traffic stop and detains a person, no matter the length of time, it constitutes a "seizure" of "persons" under the Fourth Amendment, and thus must be reasonable.  *Whren v. United States*, 517 U.S. 806, 810 (1996).  The court in *Whren* explained that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Id.*

Mr. McPhaul asserts that he did not commit a traffic infraction and did not act suspiciously.  He contends that Officer Sell unreasonably followed his vehicle for over twelve minutes, lying in wait for him to commit an infraction so as to justify the detention and the subsequent search of his person and vehicle.  However, the evidence before the Court shows that Officer Sell did not continuously follow Mr. McPhaul for twelve minutes as Mr. McPhaul alleges.  Officer Sell's affidavit of probable cause and testimony show that after initially observing Mr. McPhaul's vehicle sitting at an intersection, he continued his patrol for approximately five minutes.  When he came back to the same intersection, Mr. McPhaul's vehicle was still at the intersection.  Mr. McPhaul then committed a traffic infraction by turning right from the straight only lane across a lane of traffic into a parking lot.  Officer Sell did not initiate a traffic stop at that time because of the length of the red traffic light at that intersection.  The officer continued to follow Mr. McPhaul until he pulled into a residential driveway for approximately two minutes.  Officer Sell waited in a nearby commercial parking lot, and Mr. McPhaul backed out of the driveway and drove in the opposite direction.  Officer Sell ran a report on the license plate and learned that the vehicle was registered

to Djuane McPhaul, who had a suspended driver's license. Only after Mr. McPhaul made a third right hand turn out of the straight lane of traffic did Officer Sell initiate the traffic stop.

The Court finds Officer Sell's testimony to be credible that Mr. McPhaul twice turned improperly across a lane of traffic, thereby committing traffic offenses and giving Officer Sell probable cause to perform a traffic stop.

Mr. McPhaul's argument that the traffic stop was pretext, stemming from Mr. McPhaul's pending civil rights lawsuit against BSUPD and four of its officers, is unavailing. Officer Sell is not a defendant named in Mr. McPhaul's pending civil action nor has he had any prior interaction with Mr. McPhaul. Police may not use a traffic stop as a pretext to search for evidence. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995). However, "if there was probable cause to make the stop, and if the stopping officer was acting with authority, the stop was not pretextual. 'So long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional.'" *Id.* (quoting *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989)). Additionally, the Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law. *Whren*, 517 U.S. at 810.

Here, Officer Sell observed Mr. McPhaul commit two, and possibly three, traffic infractions, and after running his license plate (which is a reasonable practice of police officers), learned that the car was registered to driver with a suspended license. Officer Sell had probable cause to initiate a traffic stop.

C.   **The search of Mr. McPhaul's vehicle was reasonable.**

   1.   **Exceptions to the warrant requirement to search the vehicle.**

The Supreme Court has held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment –

subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  One of those exceptions, a search incident to an arrest, applies in this case.

After Officer Sell turned on his police lights and siren, Mr. McPhaul did not immediately stop but instead traveled for nearly a mile and made four turns before finally coming to a stop in a gas station parking lot.  These facts are sufficient probable cause for an arrest for resisting law enforcement in a vehicle.  Mr. McPhaul argues that he was not fleeing or resisting arrest, but instead traveled within the speed limit to the parking lot of a gas station, an area which was well lighted; therefore, there was no probable cause to arrest him and conduct a warrantless search of his vehicle.  However, whether Mr. McPhaul was guilty of resisting or fleeing officers is not relevant.  Probable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false. The constitutional validity of a warrantless arrest . . . depends upon the probable cause to effectuate the arrest under the totality of the circumstances. The relevant inquiry is not whether specific conduct is innocent or guilty, but the level of suspicion attaching to particular kinds of noncriminal acts.  *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir. 1992) (internal citations and quotation marks omitted). Under the circumstances, officers has sufficient probable cause to arrest Mr. McPhaul for resisting law enforcement.

"[W]hen an officer lawfully arrests the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile and any containers therein."  *Arizona v. Gant*, 556 U.S. 332, 341–42 (2009) (internal citation and quotation marks omitted).  This exception to the warrant requirement requires that "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable

to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.  Under the automobile exception, if there is probable cause to believe that a lawfully stopped vehicle contains evidence of criminal activity, police may search every part of the vehicle and its contents that may conceal the object of the search.  *United States v. Ross*, 456 U.S. 798, 825 (1982).  However, "the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers."  *Id.* at 809.

The Government argues that officers had probable cause to search the vehicle based on objective facts that led them to believe that the vehicle contained evidence of criminal activity. After coming to a stop, Mr. McPhaul was directed to exit the vehicle, yet he remained in the car for approximately one minute and was seen making furtive movements toward the middle console or glove box.  Once Mr. McPhaul exited the vehicle, he was found in possession of another man's driver's license.  Upon search of his person, it was discovered that Mr. McPhaul was wearing body armor.  He told the police that the KDH class 3a body armor with trauma plates was a simple back brace.  A warrantless search under the automobile exception "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *Id.*  The police do not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity.  *See United States v. Nicksion,* 628 F.3d 368, 377 (7th Cir. 2010).

Here, it was reasonable for the officers to believe that the vehicle may contain evidence related to driving with a suspended license charge or that contraband might be found because of Mr. McPhaul's furtive movements in the vehicle for nearly a minute while being directed to exit the vehicle and because he had in his hand a driver's license belonging to another individual.

Officers also assert that the search of the vehicle was a cursory protective sweep for officer safety. Under the circumstances of this case and considering all the evidence, the Court finds that it was objectively reasonable for the officers to conduct a protective sweep and search Mr. McPhaul's vehicle at the time of his arrest.

**2.    Inventory search.**

The Government also argues that even if the automobile exception did not apply, the search of the vehicle was constitutional as officers had a right to search the interior and trunk of the vehicle for an inventory search. Mr. McPhaul asserts that the officers illegally performed an inventory search of his car in violation of his Fourth Amendment rights and his rights under Article I, Section 11 of the Indiana Constitution. "Inventory searches are a recognized exception to the warrant and probable-cause requirements of the Fourth Amendment." *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006). Inventory searches are permissible "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996) (internal citation and quotation marks omitted); *see also South Dakota v. Opperman*, 428 U.S. 364 (1976). Inventory searches performed by officers before impounding and towing a vehicle are lawful if conducted in accordance to standard police procedures intended to protect the owner's property and to protect the police from the owner charging them with having stolen, lost, or damaged his property. *Cherry*, 436 F.3d at 772.

The Seventh Circuit has held that a warrantless inventory search is constitutional if the individual whose possession is to be searched has been lawfully arrested and if the search is conducted as part of the routine protocol incident to incarcerating an arrested person and in

accordance with established inventory procedures. *United States v. Jackson*, 189 F.3d 502, 508 (7th Cir. 1999).

Mr. McPhaul also argues that his vehicle was in a valid parking space and therefore an inventory search incident to a tow was unreasonable. The Court is not persuaded. The inventory search of the interior of the vehicle was conducted as part of routine BSUPD and MPD policies and in accordance with those policies. Officers Sell and Berger testified that the purpose for the inventory and towing was for the security of the vehicle and its contents. The officers discovered a stolen, loaded Smith & Wesson 9mm handgun along with ammunition in the center console. All items not deemed evidence were catalogued in a BSUPD inventory report. The officers followed the policies and conducted a constitutional inventory search of Mr. McPhaul's vehicle.

### 3. The search of the locked safe was unreasonable.

The officers discovered a locked Sentry brand safe in the trunk of Mr. McPhaul's vehicle. The key to the safe was located on Mr. McPhaul's key ring which he had placed on the roof of the vehicle as instructed by officers. The officers used the key to unlock the safe. Inside the locked safe, the officers found $2,000.00 in cash. While the search of the trunk was permissible during the inventory search, opening the safe was unreasonable, and thus, its contents must be suppressed.

Under *Florida v. Wells*, 495 U.S. 1, 4 (1990), the Supreme Court held standardized criteria, or established routine, is required to regulate the opening of containers found during inventory searches. This is essential to the principle that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id*. The policy or practice regarding these searches should be intended to produce an inventory. "The individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime." *Id.* (internal citation and quotation marks omitted).

In *State v. Lucas*, 859 N.E.2d 1244, 1251 (Ind. Ct. App. 2007), the defendant was pulled over in a stolen van. Upon search of the vehicle, the police discovered a locked metal box, which they opened without a warrant. The court held that the law enforcement officers had possession of the locked box and could have easily procured a search warrant to open and discover its contents. The court determined that failing to get a warrant to open and search the locked box that was in police custody was unreasonable under Article I, Section 11 of the Indiana Constitution.

The BSUPD and MPD officers failed to establish that it was a routine policy or procedure to open locked containers discovered during inventory searches. There is nothing in either policy which specifically authorized the search of locked containers. Rather, the MPD policy specifically states that "an inventory search is not a search for evidence or contraband and is not a search for investigative purposes." ([Filing No. 48-5](Filing No. 48-5) p. 5.) In Indiana, inventory searches conducted at the impound lot by an officer assigned to such duties are greatly preferred to searches conducted at the scene, without a warrant, by the arresting officer. *See Edwards v. State,* 762 N.E.2d 128, 134 (Ind.Ct.App.2002) (citing Fair, 627 N.E.2d at 436). There was no exigent circumstance, safety factor or department policy to mandate the opening of the locked safe located in the trunk of Mr. McPhaul's vehicle. Officers were in possession of the safe and had every opportunity to obtain a warrant to search the locked safe. As stated earlier, inventory searches are to produce an inventory; they are not to be used to discover evidence of crime. The officers' actions of opening the locked safe were unreasonable, and therefore, the evidence found in the safe must be suppressed.

### III.   CONCLUSION

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Mr. McPhaul's Motion to Suppress ([Filing No. 40](Filing No. 40)). The Court denies the Motion to Suppress with the exception of the evidence found in the locked safe, which is suppressed.

**SO ORDERED.**

Date: 7/10/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Theodore John Minch
SOVICH MINCH LLP
tjminch@sovichminch.com

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE
jeffrey.preston@usdoj.gov